IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROOR INTERNATIONAL BV and SREAM, INC., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 19-CV-5064 |
| v. | ) ) ) | |
| MUTUAL TRADERS, LLC; FARHAN PATEL, and AIRAF JALIAWALA | ) ) ) | Judge Robert W. Gettleman |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

On February 3, 2020, plaintiffs Roor International BV ("Roor") and Sream, Inc. (collectively, "plaintiffs") filed their second amended complaint (Doc. 17) against defendants Mutual Traders, LLC, Mohammed I. Patel, Farhan Patel, and Airaf Jaliawala (collectively, "defendants"), alleging trademark infringement under the Lanham Act, 15 U.S.C. § 1114, for selling smoking pipes that allegedly bore a counterfeit "RooR" trademark. Plaintiffs voluntarily dismissed their case against Mohammed Patel for failure to effectuate service of process. Plaintiffs then moved for an entry of default against the remaining defendants pursuant to Federal Rule of Civil Procedure 55(a) (Doc. 30), which the court entered on August 20, 2020. On August 24, 2020, the court granted plaintiffs' motion for default judgment (Doc. 34), and awarded plaintiffs $30,000 in statutory damages and $568.90 in costs ($30,568.90 total).

On January 19, 2023, plaintiffs filed motions for a writ of execution, and for a charging order under Illinois state law, pursuant to Rule 69(a)(1). Fed. R. Civ. Pro. 69(a)(1). Defendants' counsel filed an appearance for the first time in the instant case on January 26, 2023, which defendants followed by moving to vacate the default judgment (Doc. 42). They supported their

1

motion with their own declarations.  On February 27, 2023, plaintiff moved to compel defendants' depositions, or alternatively strike their declarations, and for sanctions pursuant to Rule 37 (Doc. 44).  Fed. R. Civ. Pro. 37.  For the reasons discussed below, the court denies plaintiffs' motion to compel (Doc. 44), and denies defendants' motion to vacate the default judgment (Doc. 42).

## BACKGROUND

The major issues in this case are timing and notice.  On July 26, 2019, plaintiffs filed their original complaint against American Smoke & Vape and John Doe, claiming trademark infringement under the Lanham Act.  On August 21, 2019, plaintiffs filed their first amended complaint, which swapped certain defendants to add Mutual Traders LLC d/b/a/ American Smoke & Vape ("Mutual Traders") and Mohammed Patel ("Mohammed").  Mutual Traders was served on October 21, 2019, through its registered agent by way of process server.  On January 3, 2020, plaintiffs sent requests for waivers of service of summons to Mohammed, Farhan Patel ("Farhan"), and Airaf Jaliawala ("Jaliawala"), but they never responded.  According to plaintiffs, the cover letter to these waivers stated that plaintiffs were interested in settlement discussions and advised defendants of their right to counsel.[1]

On February 3, 2020, plaintiffs filed a second amended complaint, which added Farhan and Jaliawala as named defendants.  According to plaintiffs, Farhan and Jaliawala were served with the second amended complaint in February 2020—but they provide no documentation of service.  Conversely, plaintiffs provide documentation that on April 5, 2020,[2] Farhan and

---

[1] Plaintiffs also state that the "waiver package" included their second amended complaint, although plaintiffs did not file their second amended complaint until February 2020.  Plaintiffs do not explain why plaintiffs would have provided Farhan and Jaliawala with waiver packages when they were not added as named defendants until the yet-to-be-filed second amended complaint.

[2] In their response, and in Christopher Lagone's certification, plaintiffs list this date as "April 5, 2022," while the affidavits of service attached to plaintiffs' response (exhibits 13 and 14) state that it was "April 5, 2020."  All other indications, including the docket, suggest that the date of service was April 5, 2020.

2

Jaliawala were served in their personal capacities by way of process server. The process server's comments state that both Farhan and Jaliawala were served at single family homes, through the front door window. The server noted that he left the "summons" in the front door handles. On November 13, 2020, plaintiff Roor moved the court to extend the 90-day period to serve defendants, which the court granted. Plaintiffs later voluntarily dismissed their case against Mohammed, due to failure to effectuate service of process upon him.

On August 3, 2020, plaintiffs filed a motion for default against Mutual Traders, Farhan, and Jaliawala pursuant to Federal Rule of Civil Procedure 55(a), for failure to appear. According to plaintiffs, they moved for default because defendants "intentionally defaulted after being validly served with process." They state that "at least one of the [Partners in Mutual Traders] lied to the process server, and/or were actively evading service." On August 6, 2020, the court entered default against defendants, and ordered plaintiffs to prepare for a prove-up hearing. On August 24, 2020, the court granted plaintiffs' motion for default judgment, and awarded statutory damages and costs.

On January 19, 2023—two and a half years later—plaintiffs filed an application for writ of execution and a motion for a charging order. Defendants received these documents on January 26, 2023. At that point, defendants' counsel contacted plaintiffs' counsel and filed an appearance on defendants' behalf. On February 3, 2023, defendants filed a motion to vacate the court's order granting default judgment on August 24, 2020, and for a rule to show cause for plaintiffs' failure to abide by the court's standing order on motion practice. In Rule 2(F) of this court's standing order, the court states that all motions for orders of default "must be mailed to or otherwise served on each party at his, her, or its last known address."

In their motion to vacate, defendants seek relief pursuant to the court's powers under

3

Federal Rules of Civil Procedure 55(c) and 60. Although they received notice of plaintiffs' post-judgment motions, defendants claim that they never received notice of plaintiffs' pre-judgment filings, including their motion for order of default. They support their motion with a declaration from Jaliawala, who states that he remembers a man approaching his home in around April 2020, "waving paperwork in his hand claiming that he had a lawsuit." He states that the man showed him "a case caption through the glass door," but "[d]ue to the pandemic I refused to open the door and he left paperwork on my front porch." According to Jaliawala, when he went outside, "[a]fter some time passed," the paperwork was gone.

Jaliawala further states that he received "a copy of a lawsuit in this matter" from Mutual Traders's registered agent in fall 2019, and he "understood this to mean that Mutual could not sell Roor pipes, and that if Mutual stopped (which [he has] no record of selling), there was no need to do anything further." Jaliawala states that he received no other documents or notices related to this lawsuit until January 2023. When he received the application for writ of execution and motion for charging order, he "immediately contacted" his attorney, who informed him for the first time that a "money judgment" had been entered against him. Farhan's declaration is very similar, although he indicates that he found out about the judgment through Jaliawala, not counsel.

Plaintiffs are skeptical of defendant Jaliawala and Farhan's declarations, and they served defendants with notices of deposition via email on February 7, 2023. Plaintiffs set the depositions for February 17, 2023, and emphasized the tight timeline to respond to defendants' motion to vacate. Defendants did not appear on that date, nor did they move for a protective order. The parties then conducted a meet and confer, in which, according to plaintiffs, they did not schedule another deposition date due to defense counsel's hostility.

In their response to defendants' motion to vacate, plaintiffs attached a "certification" under 28 U.S.C. § 1746 by Christopher Lagone ("Lagone"), who states that, "[i]t was my pattern and practice to send Rule 55-A motions to the Defendants via U.S. Mail and to the best of my knowledge, information and belief, I mailed the Rule 55-A motions to the defendant in this case." Lagone also states that it was his pattern and practice "to send Rule 55-B motions for default judgment to the Defendants via Federal Express," which to the best of his recollection, he mailed in this case.

## LEGAL STANDARD

District courts have broad discretion in determining whether to vacate a default judgment pursuant to Rules 55(c) and 60(b). See Swaim v. Moltan Co., 73 F.3d 711, 716 (7th Cir. 1996). An entry of default pursuant to Rule 55(a) is an initial entry when a party has failed to plead or otherwise defend the suit. Fed. R. Civ. Pro. 55(a). A default judgment is distinct from an entry of default; a default judgment is a final judgment pursuant to Rule 55(b) and must be entered by the court in some situations. Fed. R. Civ. Pro. 55(b).

Under Rule 55(c), the court may set aside an entry of default under Rule 55(a) for "good cause." The Seventh Circuit has determined that the moving party must establish: (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint. See Wehrs v. Wells, 688 F.3d 886, 890 (7th Cir. 2012). It is not "good cause" if the party's failure to appear was willful, careless, or negligent, or showed a willful disregard of the litigation. See Johnson v. Gudmundsson, 35 F.3d 1104, 1117 (7th Cir. 1994).

To vacate a default judgment under Rule 55(c), courts use the Rule 60(b) standard. When evaluating a motion for vacatur under Rule 60(b), a court may relieve a party from final judgment for: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered

evidence that could not have been discovered by due diligence in time to move for a new trial; (3) fraud, misrepresentation, or other misconduct by an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. A motion under Rule 60(b) must be made within a "reasonable time." Fed. R. Civ. Pro. 60(c)(1).[3]

Parties seeking to vacate a final default judgment predicated upon an entry of default generally move to vacate under Rules 55(c) and 60(b) together. In these situations, courts use the "good cause" standard to guide their inquiries, although the standard is narrower in the Rule 60(b) context. See Jones v. Phipps, 39 F.3d 158, 162 (7th Cir. 1994). This merge makes sense because a party seeking to vacate a final judgment must situate its motion within one of the categories contained in Rule 60(b). When the party seeks vacatur of the default judgment based on the improper entry of default, its motion falls under category (5), vacating a judgment that is itself "based on a prior judgment that has been reversed or otherwise vacated." The court would need to vacate the entry of default for category (5) to apply.

The Seventh Circuit has determined that "[o]ther factors necessarily influence the district court's decision [to vacate]," including weighing the case's burden on its docket, the legitimate reliance on the default by the nonmoving party, and the policy considerations favoring termination of stalled litigation against the possibility of injustice based, in part, upon the substantive merit of the nonmovant's claims and the moving party's proffered excuses for the default." See Swaim v. Moltan Co., 73 F.3d 711, 722 (7th Cir. 1996).

---

[3] For motions under Rule 60(b) for reasons 1–3, a "reasonable time" means not more than one year after the judgment, barring defendants from moving to vacate for those reasons. Fed. R. Civ. Pro. 60(c)(1).

**DISCUSSION**

Before turning to defendants' motion to vacate the default judgment, the court considers plaintiffs' motion to compel defendants' depositions or, in the alternative, to strike defendants' declarations. Plaintiffs also move for sanctions under Rule 37. Fed. R. Civ. Pro. 37. Plaintiffs oppose defendants Farhan and Jaliawala's declarations because they were unable to cross-examine these defendants prior to responding to their motion. Because defendants failed to appear for their depositions, plaintiffs argue that defendants violated Rule 69(a)(2), which provides that: "In aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment creditor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. Pro. 69(a)(2). Because motions to vacate do not stay default judgments, defendants' motion did not affect their obligation to aid plaintiffs in executing the August 2020 default judgment.

The court agrees that defendants violated Rule 69(a)(2) when they failed to appear for their depositions. If defendants objected to being deposed, they should have filed a motion to quash the depositions, or filed a protective order under Rule 26(c). Fed. R. Civ. Pro. 37(d)(1)(A). That being said, the court denies plaintiffs' motion to compel defendants' depositions because it gives the declarations the weight that they are worth; although defendants argue that their declarations show that plaintiffs failed to effectuate adequate service, the court finds the opposite, especially where defendants' declarations match up with, rather than contradict, plaintiffs' descriptions of the events at issue.

As discussed further below, the court denies defendant's motion to vacate, strikes plaintiffs' motion to compel defendants' depositions as moot, and declines to impose sanctions. The court declines to impose sanctions only because defendants' failure to appear resulted in

7

little prejudice to plaintiffs, given the minimal weight that the court gives defendants' declarations. See, e.g., Engineered Abrasives, Inc. v. American Machine Products & Service Inc., No. 14-7342, 2015 WL 1281460, at *14 (N.D. Ill. Mar. 18, 2015) ("In determining if sanctions are appropriate, the Court considers (1) whether Defendants breached their discovery obligations, (2) Defendants' level of culpability for the breach, and (3) the prejudice that resulted from the breach."). On the other hand, the court grants plaintiffs' request for reasonable attorney's fees for their motion to compel. Under Rule 37(d), courts may grant reasonable fees and expenses when a party fails to obey a discovery order or fails to appear for a deposition.

Next, the court evaluates defendants' motion to vacate the final default judgment from August 2020, which depends upon the court's discretion to vacate its entry of default. The court's entry of default was based on defendant's failure to respond or otherwise appear in this case. Defendants argue that there is "good cause" for their default because they: (1) were not served with the second amended complaint; and (2) were not served with plaintiffs' motions for entry of default or default judgment.

The court begins by evaluating defendant's argument that the court should vacate its order for default judgment because they were not served with the second amended complaint, or "any" pre-judgment notice at all, including for pleadings and motions. The court rejects this argument as sufficient to vacate its default judgment, although the court agrees that plaintiffs provide no evidence to suggest that they served defendants with their second amended complaint. The court determines that the evidence suggests that defendants did receive a summons, which they willfully disregarded.

The Seventh Circuit's reasoning in Swaim v. Moltan, 73 F.3d 711 (7th Cir. 1996), is instructive. In Swaim, the court affirmed the district court's denial of the defendant's motion to

8

vacate its default judgment, which the defendants moved to vacate for ineffective and "confused" service. 73 F.3d 711, 716 (7th Cir. 1996). The plaintiffs first attempted to serve the summons and complaint by certified mail, but the postal service returned the papers unclaimed. Id. at 715. Next, the plaintiff hired a process server to personally deliver the papers, but the defendant's secretary refused to accept them. Id. When the process server left the papers at the secretary's feet, the papers were mailed back to plaintiffs. Id. The plaintiff's last attempt at service was mailing the papers to the Secretary of State as the defendant's agent, which is allowed under Indiana law. Id. at 715–16.

Because the defendant failed to appear, the clerk of the district court entered default against the defendant under Rule 55(a), and later granted default judgment. Id. at 716. The defendant filed a motion to vacate under Rules 55(c) and 60(b), but the court denied the defendant's motion to vacate because it determined that service of process was "substantially accomplished." Id. The court also found that the defendant was actively evading service. Id. The Seventh Circuit affirmed. Id. at 722.

In this case, defendants argue that the court's default judgment should be vacated because they received ineffective service. In light of Swaim, the court rejects this argument. The process server's notes from April 5, 2020, reveal that the process server substantially served Farhan and Jaliawala with at least a court summons, if not the second amended complaint, by placing the paperwork in their front door handles. Given the COVID-19 pandemic, it was understandable for defendants to refuse to open their door to the process server, but their failure to immediately retrieve the paperwork from their door handles shows a willful disregard for, or at the very least inexcusable neglect of, this lawsuit, as well as suggests defendants' intent to evade service. The process server's notes are corroborated by defendants' declarations, which support his narrative.

9

Defendants' next argument is that the court should vacate its default judgment because defendants did not receive notice of plaintiffs' motions for default, or of the eventual entry of default and default judgment against them for failure to appear. Defendants seem to argue that they would have appeared earlier if they had known about the judgments against them.

The court rejects defendants' argument that this lack of notice establishes good cause to vacate the default judgment. Although plaintiffs violated this court's standing order that motions for default "must be mailed to or otherwise served on each party at his, her, or its last known address," this court's order imposes stricter requirements than the Federal Rules, which provide that "[n]o service is required on a party who is in default for failing to appear," unless the new pleading asserts a new claim. Fed. R. Civ. Pro. 5(a)(2). See also North Central Illinois Laborers' Dist. Council v. S.J. Groves & Sons Co., 842 F.3d 164, 168–169 (7th Cir. 1988). At most, plaintiffs' failure to serve defendants with its motions for default, as well as the court's orders against them, was negligent—especially considering plaintiffs' conscientiousness regarding service as reflected in the docket, including their dismissal of Mohammed for failure to effectuate service, and their motion for extension of time to serve defendants.

In any case, the court is not convinced that defendants would have appeared in this case even if they had notice of plaintiffs' default-related motions and orders. In their declarations, defendants imply their conscious choice to ignore the lawsuit, which they understood to mean that "Mutual could not sell Roor pipes, and that if Mutual stopped . . . there was no need to do anything further." The Seventh Circuit has previously determined that a defendant's inaction based on assumptions about a moving party's behavior is not enough to avoid default judgment. See Merrill Lynch Mortg. Corp. v. Narayan, 908 F.2d 246, 251 (7th Cir. 1990). Defendants were "inattentive to [their] obligations," and willfully chose not to conduct this litigation with the

degree of diligence and expediency prescribed by the court. See Jones v. Phipps, 39 F.3d 158, 164 (7th Cir. 1994).

It is true that plaintiffs did not act with expediency when they waited over two years to file their motions to execute this court's judgment. This litigation was stalled until plaintiffs filed their 2023 motions, which finally alerted defendants to the judgments against them and their obligation to pay damages. Such delay may have been prejudicial to defendants, who acted quickly after learning of the "money judgment" against them, and who argue that they have meritorious defenses against plaintiffs' trademark infringement claims.

The court does not agree that defendants have established meritorious defenses. While defendants cite Dass v. Yale, 2013 IL App (1st) 122520, to suggest that corporate members and managers cannot be liable for the actions of the corporation, the Illinois legislature expressly overruled Dass in 2019 when it enacted 805 ILCS 180/10-10(a-5), which states that "[t]he purpose of this subsection (a-5) is to overrule the interpretation of subsections (a) and (d) set forth in Dass v. Yale, 2013 IL App (1st) 122520, and Carollo v. Irwin, 2011 IL App (1st) 102765, and clarify that under existing law a member or manager of a limited liability company may be liable under law other than this Act for its own wrongful acts or omissions, even when acting or purporting to act on behalf of a limited liability company." To the extent that defendants offer additional defenses, such as plaintiffs' "willful concealment" of its default motions, the court finds that defendants offer them without any factual support, and general denials of the allegations are insufficient to state a meritorious defense. See Pretzel & Stouffer v. Imperial Adjusters, Inc., 28 F.3d 42, 46 (7th Cir. 1994).

Last, the court notes that because the entry of default and default judgment in this case stand, the court was justified in ordering statutory damages, with trebling for willful

11

infringement, under 15 U.S.C. § 1117(a).

## CONCLUSION

For the reasons stated above, the court denies defendants' motion to vacate the August 24, 2020, default judgment (Doc. 42), and denies plaintiffs' motion to compel (Doc. 44).

ENTER:

Robert W. Gettleman
**United States District Judge**

**DATE: April 5, 2023**